IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:25-CV-175

| | | |
|---|---|---|
| ACCORDIA LIFE AND ANNUITY COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| EDWARD MCCABE, et al., | ) | |
| Defendants. | ) | |

The matter comes before the Court on interpleader cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. [DE 23, at 6; DE 29]. The Court also considers Interpleader Defendant Edward McCabe's motion to dismiss the cross-claim against him. [DE 23] at 1. The parties have filed responses and replies, or the time for doing so has expired. A hearing on the cross-motions was held before the undersigned on July 8, 2026, in Raleigh, North Carolina. [DE 35]. For the following reasons, Interpleader Defendant Edward McCabe's cross-claim for judgment on the pleadings, [DE 23] at 6, is GRANTED; Interpleader Defendants Richard and Janet Cipolla's cross-claim for judgment on the pleadings, [DE 29], is DENIED; and Interpleader Defendant Edward McCabe's motion to dismiss, [DE 23] at 1, is GRANTED.

**BACKGROUND**

This case seeks to resolve the question of which set of interpleader defendants is entitled to the death benefit from a life insurance policy. To determine the answer, Plaintiff Accordia Life and Annuity Company ("Accordia") filed a complaint on September 25, 2025, against Interpleader

Defendant Edward McCabe ("Edward") and Interpleader Defendants Richard and Janet Cipolla ("the Cipollas") [DE 1]. Edward is the decedent-insured's ex-husband. The Cipollas were the decedent-insured's parents, who became co-administrators of her estate upon her death.

The following facts are undisputed. Edward and Amy were married in 2008. Around May 28, 2013, Accordia's predecessor company issued a life insurance policy ("Policy") to the decedent insured, Amy McCabe ("Amy"). This policy had a value of $90,000, designating Amy as the Policy owner and Edward as the Policy's primary beneficiary. At the time of the Policy's issuance, Edward was still Amy's husband. By approximately December 13, 2019, Amy and Edward separated. On March 24, 2020, the two entered into a separation and property agreement. [DE 16-1] at 12. Most pertinent to the present action is Section 2.7, which contains the following "Husband's Waiver of Claims Against Wife's Estate."

> Except as herein otherwise provided, the Husband does hereby waive, discharge, release, quitclaim, renounce and relinquish unto the Wife, her heirs, executors, administrators and assigns: (a) all and every right to a distributive share of the estate of the Wife upon her death; (b) all and every right to elect to take a life estate in real estate belonging to the Wife upon her death; (c) all and every right to dissent from any will of the Wife upon her death; (d) all and every right to a year's allowance upon the death of the Wife; (e) all and every right to administer upon the estate of the Wife upon her death; (f) all and every right to claim an[ ] elective share of Wife's estate upon her death; (g) all other rights or interests in property, both real and personal, which the Husband now has or may hereafter acquire arising out of or accruing to him by reasons of the death of the Wife.

[DE 16-1] at 6. On March 18, 2021, Amy and Edward divorced. For almost four years after, Amy did not take any action to change her life insurance policy's beneficiary designation. On January 1, 2025, Amy died. At Amy's death, Edward was still the named beneficiary of her life insurance policy.

Soon after Amy's death, both Edward and the Cipollas (the co-administrators of Amy's estate) initiated separate claims for the death benefit. Accordia then filed this suit to determine which of the interpleader defendants are entitled to the Policy's death benefit.

On December 4, 2025, Edward filed an answer to the complaint [DE 11]. On December 29, 2025, the Cipollas filed an answer to the complaint and a cross-claim against Edward for breach of contract (specifically, breach of the separation agreement) [DE 16]. On January 20, 2026, Edward filed an answer to the cross-claim, a motion to dismiss the cross-claim, and a motion for judgment on the pleadings [DE 23]. On January 22, 2026, Accordia deposited the life insurance proceeds with the registry of this Court. On February 10, 2026, the Cipollas responded to the motion to dismiss and filed a cross-motion for judgment on the pleadings [DE 29]. On February 24, 2026, Edward responded to their cross-motion [DE 32]. Finally, on March 10, 2026, the Cipollas replied in support of their own motion for judgment on the pleadings [DE 33].

**DISCUSSION**

A motion for judgment on the pleadings pursuant to Rule 12(c) allows for a litigant to move for entry of judgment after the close of the pleadings, but early enough to not delay trial. Fed. R. Civ. P. 12(c). In reviewing these motions, courts apply the Rule 12(b)(6) standard. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 375 (4th Cir. 2012). To succeed on a motion for judgment on the pleadings, the movant must clearly establish that there is no dispute of material fact left to be resolved, and as such, the movant is entitled to judgment as a matter of law. *See A&C Gaming, LLC v. BHG Financial, LLC*, 804 F.Supp.3d 636, 642 (E.D.N.C. Sep. 24, 2025). "In reviewing an order on cross-motions for judgment on the pleadings, we accept the facts alleged by the non-moving party as true and draw all reasonable factual inferences in favor of the non-moving

party. And we review the motions separately, applying this standard to both motions." *Navigators Ins. Co. v. Under Armour, Inc.*, 165 F.4th 171, 180 n. 9 (4th Cir. 2026) (citations omitted).

1. Cross-motions for Judgment on the Pleadings

Bearing these standards in mind, and having determined that the parties agree on the material facts, the Court now turns to the cross-motions for judgment on the pleadings. The parties agree that North Carolina law governs this dispute. North Carolina General Statutes § 58-58-95 states:

> When a policy of insurance is effected by any person on his own life, . . . the lawful beneficiary thereof, other than himself or his legal representatives, is entitled to its proceeds against the creditors and representatives of the person effecting the insurance. The person to whom a policy of life insurance is made payable may maintain an action thereon in his own name. A person may insure his or her own life for the sole use and benefit of his or her spouse, . . . and upon his or her death the proceeds from the insurance shall be paid to or for the benefit of the spouse, . . . free from all claims of the representatives or creditors of the insured or his or her estate.

*Id.* At the same time, a separation agreement is a binding contract between spouses. *Pataky v. Pataky*, 160 N.C. App. 289, 296 (2003). And, a decedent's contractual rights may be pursued by the decedent's estate. *See* N.C. Gen. Stat. § 28A-18-1.

However, North Carolina courts have generally held that separation and property settlement agreements do not modify an insurance beneficiary's status as such, unless the agreement explicitly and clearly conveys an intention to effect a beneficiary change. *See generally Daughtry v. McLamb*, 132 N.C. App. 380 (1999) (holding a separation agreement which divested one spouse of "all right, title and interest in . . . any and all insurance, pensions, retirement benefits and other benefits arising out of [the] [p]etitioner's employment" did not sufficiently show that it was the intention of the parties to divest that spouse as beneficiary on a life insurance policy); *Devane v. Travelers Ins. Co.*, 8 N.C. App. 247 (May 27, 1970) (holding a separation agreement

relinquishing all rights to the spouse's property did not annul or revoke the beneficiary designation in a life insurance policy, especially since no action was taken to change the beneficiary); *Imperial Tobacco Grp. Ltd. v. Peoples Bank & Trust Co. of Rocky Mount*, 7 N.C. App. 202 (Feb. 4, 1970) (holding that a separation agreement divesting one wife of all rights in the property of the husband did not revoke her beneficiary status in his life insurance policy, even when that designation was only specified as "widow"); *see also Hartford Life & Accident Ins. Co. v. Herring*, No. 7:21-CV-638, 2023 WL 4670327 at *3 (W.D. Va. Jul. 20, 2023) (applying North Carolina law).

Beyond this, some courts also consider the length of the time during which the insured could have changed the beneficiary—that is, the period between the execution of the property settlement agreement and the death. *See, e.g.*, *Daughtry*, 132 N.C. App. at 382 ("[I]n the four years since the divorce, the decedent never attempted to change . . . the beneficiary.").

In *Devane v. Travelers Ins. Co.*, 8 N.C. App. 247 (1970), a husband and wife divorced after executing a separation agreement. *DeVane*, 8 N.C. App. at 249. At issue in that case was whether the separation agreement or the divorce revoked the designation of the ex-wife as beneficiary to the life insurance policy. *Id.* The North Carolina Court of Appeals answered the question in the negative. *Id.* In reaching those holdings, the *DeVane* court affirmed the general reasoning in North Carolina as laid out that same year in *Imperial Tobacco Grp. Ltd. v. Peoples Bank & Trust Co. of Rocky Mount*:

> General expression or clauses in a property settlement, agreement between a husband and wife, however, are not to be construed as including an assignment or renunciation of expectancies, and *a beneficiary therefore retains his status* under an insurance policy if it does not clearly appear from the agreement *that in addition to* the segregation of the property of the spouses it was intended to deprive either spouse of the right to take under an insurance contract of the other[.]

*Devane*, 8 N.C. App. at 250 (quoting *id.*, 7 N.C. App. at 206).

Helpfully, a district court in this Circuit has already examined both *DeVane* and *Imperial Tobacco Grp. Ltd.* in applying North Carolina law to facts similar to the instant case. *See Hartford*, 2023 WL 4670327 at *3. In that case, the insured participated in life insurance policy through his employer, and the insured designated his then-wife as the beneficiary. *Id.*, at *1. Just under two years after designating the wife as beneficiary, the couple entered a separation and property settlement agreement. *Id.* In that case, the settlement agreement in *Herring* explicitly contemplated the life insurance policy:

> Life Insurance. Husband acknowledges that he is the owner of life insurance policies with JetBlue . . . . Husband shall retain ownership of these policies, free and clear of any claim by wife, and shall be solely responsible for the premium payments that may be due thereon.

*Id.* The insured died, having never changed the beneficiary. *Id.* Ultimately, and in accordance with *DeVane* and *Imperial Tobacco Grp. Ltd.*, the *Herring* court determined that the separation agreement *did not* alter the ex-wife's status as beneficiary, reasoning, even "[w]hile the separation agreement state[d] that [the insured] would retain ownership of these polic[ies], it [did] not clearly indicate that the beneficiary of the policy was to change." *Id.* at *3–4. Pursuant to this holding, the district court reasoned:

> Because North Carolina law requires that it must "clearly appear" that a separation agreement is intended to alter beneficiary status, and the separation agreement between [the decedent insured and his ex-spouse] does not do so, the court must follow the general rule that "the failure of the husband to exercise his power to change the beneficiary ordinarily indicates that he does not wish to effect such a change."

*Id.* (quoting *DeVane*, 8. N.C. App. at 249).

The Agreement at issue does not convey a specific intent effect the Policy's beneficiary designation. In fact, it does not specifically mention the Policy at all. Moreover, for (nearly) five years following the Agreement but before Amy's death, Amy never took steps to change the

Policy's beneficiary. Thus, this Court will order the payment of the death benefit in accordance with the Policy. As such, Edward is entitled to the benefit.

2. Motion to Dismiss the Breach of Contract Cross-Claim

The Cipollas' cross-claim and their cross-motion for summary judgment ask for the same relief: a ruling requiring Edward McCabe to specifically perform under the separation agreement by refraining to claim entitlement to the life insurance proceeds, and a judgment declaring that Amy's Estate is entitled to the proceeds. Those requests are now moot. Therefore, the Court will grant the motion to dismiss the Cipolla's cross-claim.

## CONCLUSION

For the foregoing reasons, Interpleader Defendant Edward McCabe's cross-claim for judgment on the pleadings, [DE 23] at 6, is GRANTED; Interpleader Defendants Richard and Janet Cipolla's cross-claim for judgment on the pleadings, [DE 29], is DENIED; and Interpleader Defendant Edward McCabe's motion to dismiss, [DE 23] at 1, is GRANTED.

Additionally, Defendant Edward McCabe is DIRECTED to file information with this Court regarding the most appropriate method for the Clerk to disburse the associated funds from the registry. After the funds are disbursed, the Clerk will close the case.

SO ORDERED, this 28 day of September, 2026.

Terrence Boyle

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE